No. 20,953.

EDNA KEMP and D. O. HOLBERT, *Appellants,* v. THE BARR GAS COMPANY et al., *Appellees.*

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Existing Gas Well on Leased Premises—Lessee's Right to Operate.*  Under the terms of the lease set out in the opinion, the lessee has the right to operate a gas well that was on the leased premises at the time of the execution of the lease.

2. SAME—*Demurrer Properly Sustained.*  The demurrer to the evidence on the second count of the amended petition was properly sustained.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge.  Opinion filed November 9, 1918.  Affirmed.

*Thurman Hill,* and *S. H. Piper,* both of Independence, for the appellants.

*Thomas E. Wagstaff,* of Independence, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs commenced this action to recover damages for gas alleged to have been wrongfully taken by the defendants from a gas well owned by the plaintiffs on their land. The plaintiffs also sought to have the defendants enjoined from taking gas from the well. Judgment was rendered in favor of the defendants, and the plaintiffs appeal.

1. On January 9, 1914, plaintiff D. O. Holbert executed the following written instrument:

### "OIL AND GAS LEASE.

"Agreement, made and entered into the 9th day of January, A. D. 1914, by and between D. O. Holbert, an unmarried man, of Independence, Kansas, party of the first part, lessor, and Charles Barr, Ed. B. Barr and S. H. Barr, party of the second part, lessees.

"Witnesseth: That said party of the first part, for and in consideration of one hundred sixty dollars to him in hand well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the party of the second part, to be paid, kept and performed, has granted, demised and leased and let and by these presents does grant, demise, lease and let unto the said second party their heirs, executors and administrators, successors and assigns, for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, powers, stations and structures thereon to produce and take care of said products, all that certain tract of land situate in the County of Montgomery, State of Kansas, described as follows, to-wit:

"The west half of the southeast quarter and the east half of the southwest quarter of section 27, township 32, range 15 and containing one hundred sixty acres, more or less.

"It is agreed that this lease shall remain in force for a term of ten years from this date and as long thereafter as oil and gas or either of them, is produced from said land by the party of the second part, their heirs, administrators, executors, successors or assigns.

"In consideration of the premises, the said party of the second part covenants and agrees:

"1. To deliver to the credit of the first parties, his heirs, or assigns free of cost in the pipe line to which it may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises.

"2. To pay the first parties the equal one-eighth part of all the sales, for the gas from each well when gas only is found, while the same is being used off of the premises and the first parties to have gas free of cost from any such well for three stoves, and three inside lights in the principal dwelling house on said land during the same time by making his own connections with the well.

"3. To pay the first parties for gas produced from any oil well and used off of the premises at the rate of fifty dollars per year, for the time during which such gas shall be used, said payments to be made three months in advance. The party of the second part agrees to complete a well on said premises within one year from the date hereof, or pay at the rate of one hundred sixty dollars for each additional years such completion is delayed from the time above mentioned for the full completion of such well until well is completed and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the terms of this lease. The party of the second part shall have the right to use, free of cost, gas, oil, and water produced on said land for its operation thereon, except water from the wells of first party. When requested by first parties, the second party shall bury its pipe lines below plow depth. No well shall be drilled nearer than 200 feet to the house or barn on said premises. Second party shall pay for damages caused by them to growing crops on said land. The second party shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. The second party shall not be bound by any change in the ownership of said land until duly notified of any such change, either by notice in writing, duly signed by the parties to the instrument of conveyance or by receipt of the original instrument of conveyance, or a duly certified copy thereof.

"All payments which may fall due under this lease may be made directly to D. O. Holbert or deposited by lessees to his credit in Independence State Bank, Independence, Kansas.

"The party of the second part, its successors or assigns, shall have the right at any time, on the payment of ten and no hundredths dollars to the party of the first part, his heirs or assigns, to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine; provided this surrender clause and the option therein reserved to the lessee shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this lease or any of its terms or to recover possession of the leased land, or any part thereof, against or from the lessor, his heirs, executors, administrators, successors or assigns or any other person or persons. All covenants and agreements herein set forth between the parties hereto shall extend to their successors, heirs, executors, administrators and assigns."

The plaintiffs contend that the judgment is contrary to the evidence. They argue that, after giving the lease, Holbert continued to be the owner of the existing gas well and of the gas produced therefrom. Their argument is partly based on the distinction that this court has drawn between a lease of land to mine for gas or oil and a license to do the same thing. Whether lease or license, the rights of the plaintiffs depend on the written instrument signed by Holbert. The question for

determination turns on the interpretation of that instrument. By it the Barrs are given the right to mine and to operate for gas and oil. The court takes judicial notice of the fact that gas and oil are mined by means of deep wells drilled into the earth. The lease places no restrictions on the right of the Barrs to operate for gas or oil. If there had been twenty producing gas wells on the land at the time the lease was signed, or if the premises had been fully drilled and all wells were producing gas, would the lease have granted the right to operate these wells? This question must be answered in the affirmative. If such right would have been so granted, it follows that the lease carried the right to operate the one well then existing on the land.

The plaintiffs rely on the following language contained in the lease:

"For the sole and only purpose of mining and operating for oil and gas and of laying pipelines and of building tanks, powers, stations and structures thereon to produce and take care of said products.·

. . . . . . . . . . . . .

"To pay the first parties the equal one-eighth part of all the sales, for the gas from each well when gas only is found, while the same is being used off of the premises."

This language does not restrict the gas or oil rights granted by the lease. The proper interpretation of the lease is that it granted to the Barrs the right to operate the gas well that was in existence at the time the lease was executed. This interpretation leaves the plaintiffs without any substantial foundation for their appeal.

2. Another question urged by the plaintiffs is that the court erred in sustaining the defendants' demurrer to the plaintiffs' evidence on the second count of their amended petition. That count alleged injury to the gas well by the manner in which it was operated. This contention must likewise fail because of the terms of the lease.

A part of the judgment reads:

"That the defendants and each of them are enjoined from taking any gas from out of the well which was drilled on said premises before said lease was executed and in which there was material, including casing and tubing at the time of the execution of said lease until said defendants pay plaintiffs for the cost or value of said material in said well, which the court finds to be of the value of four hundred ($400.00) dollars."

The judgment is affirmed.